1  SWEENEY, DAVIDIAN, & GREENE LLP
   James F. Sweeney (SBN 124527)
2  Stephen J. Greene, Jr. (SBN 178098)
   Stephen R. McCutcheon, Jr. (SBN 191749)
3  Benjamin Kinne (SBN 221680)
   8001 Folsom Boulevard, Ste. 101
4  Sacramento, CA  95826
   Telephone: (916) 388-5170
5  Facsimile: (916) 388-0357

6  Attorneys for Applicant Defendant-Intervenor
   THE ALLIANCE OF CATHOLIC HEALTH CARE,
7  a California non-profit healthcare association

8                   IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                          SAN FRANCISCO DIVISION

| | |
|---|---|
| 11  STATE OF CALIFORNIA, ex rel. BILL LOCKYER, in his official capacity as Attorney 12  General of the State of California; and JACK O'CONNELL, in his official capacity as the State 13  Superintendent of Public Instruction, 14       Plaintiffs, 15  v. 16  UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF LABOR; ELAINE 17  CHAO, in her official capacity as the Secretary of Labor; UNITED STATES DEPARTMENT OF 18  HEALTH AND HUMAN SERVICES; TOMMY G. THOMPSON, in his official capacity as the 19  Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF 20  EDUCATION; and MARGARET SPELLINGS, in her official capacity as the Secretary of 21  Education, 22       Defendants, 23       *and* 24  THE ALLIANCE OF CATHOLIC HEALTH CARE, a Non-Profit Healthcare Association, On 25  Behalf of Its Individual Members; 26       Proposed Defendant-Intervenors, | Civil Action No.:  C-05-00328 JSW  **MEMORANDUM OF POINTS AND AUTHORITIES OF THE ALLIANCE OF CATHOLIC HEALTHCARE IN SUPPORT OF MOTION TO INTERVENE**  Date:  October 14, 2005 Time:  9:00 a.m. Hon. Jeffrey S. White Complaint Filed:  January 25, 2005 |

27
28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

SUMMARY OF ARGUMENT .............................................................................................. 6

ARGUMENT ........................................................................................................................... 7

The Alliance Is Entitled To Intervene As A Matter Of Right Under Federal Rule Of Civil Procedure, Rule 24(a). ............................................................................................................. 7

    A.    The Alliance's Interest Under the Weldon Amendment in Freedom From Discrimination and State-Compelled Provision of Abortions is Sufficient to Support Intervention as a Matter of Right ................................................................... 8

    B.    The Alliance's Interests May Be Directly Impaired as a Result of this Litigation ....... 10

    C.    The Alliance's Interests are not Adequately Represented by Existing Parties. ............ 11

    D.    The Alliance's Motion is Timely. ................................................................................. 12

The Alliance's Intervention Under Federal Rule Of Civil Procedure, Rule 24(a) Is Also Appropriate. .......................................................................................................................... 13

CONCLUSION ..................................................................................................................... 14

SWEENEY, DAVIDIAN & GREENE LLP
ATTORNEYS AT LAW
8001 FOLSOM BOULEVARD, SUITE 101
SACRAMENTO, CALIFORNIA 95826

# TABLE OF AUTHORITIES

**Cases**

*California v. Tahoe Regional Planning Agency*, 792 F.2d 775 (9th Cir. 1986) ............................ 11

*Committee to Defend Reproductive Rights v. Myers*, 29 Cal. 3d 252 (1981) .................................. 4

*County of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) ............................................................ 9

*County of Orange v. Air California*, 799 F.2d 535 (9th Cir. 1986), *cert. denied*, 480 U.S. 946 (1987) ................................................................................................................................ 12

*Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980) ..................................................................... 9, 10

*Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094 (9th Cir. 2002) .......................................... 13

*People v. Belous*, 71 Cal. 2d 954 (1969) ........................................................................................ 4

*Planned Parenthood v. Casey*, 505 U.S. 833 (1992) .................................................................... 13

*Roe v. Wade*, 410 U.S. 113 (1973) ................................................................................................ 13

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) ...................................... 8, 10, 11

*Sierra Club v. United States EPA*, 995 F.2d 1478 (9th Cir., 1993) ............................................... 9

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ................... 8, 10

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) .............................................................. 11

*United States v. Oregon*, 839 F.2d 635 (9th Cir. 1988) ................................................................ 11

*Washington State Building & Construction Trades v. Spellman*, 684 F.2d 627 (9th Cir. 1982) ................................................................................................................... 9, 10

*Yniguez v. Arizona*, 939 F.2d 727 (9th Cir. 1991) ........................................................................ 11

ii

Applicant The Alliance of Catholic Health Care's MPA in Support of Motion to Intervene.
Civil Action No.: C-05-00328 JSW

## INTRODUCTION

Applicant the Alliance of Catholic Health Care ("the Alliance") is a non-profit association of religiously-affiliated health care providers who are among the class of beneficiaries whose right of conscience was intended to be protected by the United States Congress' enactment of Section 508(d) of the Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 2005 (Division F of the Consolidated Appropriations Act, 2005), Pub. L. No. 108-447, § 508(d)(1), 118 Stat. 2809, 3163 (2004) (the "Act" or "Weldon Amendment"). As a direct beneficiary of the conscience protections afforded by Congress in enacting the Act, the Alliance, representing California's Catholic health care institutions, has a direct interest in the Act's conscience protections which will be impaired, impeded, or denied if the Plaintiffs prevail. Intervention under Federal Rule of Civil Procedure, Rule 24, is appropriate and warranted.

The Alliance's interests stand in marked contrast to those of the existing federal defendants, whose interests are directed primarily to defending the Congressional prerogatives under the Spending Clause to impose limitations upon federal appropriations made to state and local governments. To be sure, the interests of the United States in this proceeding are compelling and important, but they markedly diverge from the equally compelling and important interests of the Alliance in ensuring that the First Amendment religious freedom and liberty of conscience rights of California's Catholic health care institutions are respected and accommodated. Indeed, Congress specifically enacted the Weldon Amendment to protect the fundamental First Amendment religious freedom and liberty of conscience rights of religiously-affiliated healthcare institutions, such as those California Catholic healthcare institutions which comprise the Alliance. Fundamentally important constitutional rights of the Alliance members will suffer greatly if the Plaintiffs succeed in abrogating the important protections afforded by the Weldon Amendment. Because the Alliance has a direct and fundamental interest in the outcome of these proceedings, it should be permitted to intervene as a matter of right pursuant to Federal Rule of Civil Procedure, Rule 24(a)(2).

1

Applicant The Alliance of Catholic Health Care's MPA in Support of Motion to Intervene.
Civil Action No.: C-05-00328 JSW

SWEENEY, DAVIDIAN & GREENE LLP
ATTORNEYS AT LAW
8001 FOLSOM BOULEVARD, SUITE 101
SACRAMENTO, CALIFORNIA 95826

In the alternative, the Alliance seeks permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2) on the ground that the Alliance's defenses and the main action have a question of law or fact in common. As this action is in the earliest of stages, intervention is timely, and will not unduly delay or prejudice the adjudication of the rights of the original parties. The court has not substantially engaged the issues in the case, and no discovery has been conducted to date. Likewise, permissive intervention is appropriate and the Alliance should be permitted to permissively intervene, in the event the Court is not inclined to permit the Alliance to intervene as a matter of right.

## STATEMENT OF FACTS

The Alliance of Catholic Health Care is a California non-profit healthcare association representing California's Catholic health care systems and hospitals, and is a "health care entity" within the meaning of Section 508(d). Declaration of Lori C. Dangberg ("Dangberg Dec.") ¶ 2. The Alliance's members include fifty-seven (57) California Catholic and community-based affiliated hospitals and it represents nearly 16 percent of all California acute care in-patient hospitals. *Id*. at ¶ 3. The Alliance's California members include: Catholic Healthcare West with approximately 7,500 physicians, the largest not-for profit hospital system in California and the eighth largest in the nation; Daughters of Charity Health Care System with six hospitals and medical centers along the California coast; Providence Health System with four medical centers in Southern California, as well as facilities in Alaska, Washington, and Oregon; and St. Joseph Health System with ten hospitals throughout California. *Id*. The Alliance's members share a profound reverence for the dignity of human life from conception to natural death; and, consistent with their moral, ethical, and religious beliefs, do not provide abortion services. As the Alliance's members provide medical services within the State of California, the Weldon Amendment protects them from State discrimination on the ground that they refuse to provide abortion services. *Id*. at ¶ 4.

On November 20, 2004, Congress approved the Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 2005 (Division F of

the Consolidated Appropriations Act, 2005), Pub. L. No. 108 447, § 508(d)(1), 118 Stat. 2809, 3163 (2004) regarding fiscal year 2005 spending. The Act as approved by Congress included an amendment preventing state, federal, and local governments from discriminating against health care entities receiving federal funds allocated under the Act on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions.

Section 508, subdivision (d) of the Act provides:

(1) None of the funds made available in this Act may be made available to a Federal agency or program, or to a State or local government, if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions.

(2) In this subsection, the term 'health care entity' includes an individual physician or other health care professional, a hospital, a provider-sponsored organization, a health maintenance organization, a health insurance plan, or any other kind of health care facility, organization, or plan.

This conscience protection provision, commonly referred to as the "Weldon Amendment," protects physicians and health care entities from governmental coercion to engage in ethically, morally, and religiously objectionable medical procedures and research. The Weldon Amendment applies only to governmental efforts to coerce health care entities to perform, train for, or refer for abortions. The Amendment protects those health care entities that do have conscience-based objections to abortion from governmental coercion to participate, either directly or indirectly, in the provision of abortions and ensures that such conscience rights are respected by federal, state, and local governments and governmental agencies. It does not affect existing access to abortion, the dissemination of information regarding abortion-related services, or Medicaid-related obligations imposed upon the States.

The State's complaint seeks to declare unconstitutional, and to enjoin enforcement of, the Weldon Amendment on the spurious grounds that it chills the California Attorney General's willingness to take action against health care entities who refuse to provide "medically necessary" or "emergency" abortions, interferes with California's regulatory scheme that requires health care facilities that provide emergency services to perform "medically necessary"

3

SWEENEY, DAVIDIAN & GREENE LLP
ATTORNEYS AT LAW
8001 FOLSOM BOULEVARD, SUITE 101
SACRAMENTO, CALIFORNIA 95826

emergency abortions, and does not contain an exception for abortions necessary to protect the life or health of the woman. The complaint alternatively seeks "a declaration that the enforcement of facially-neutral laws designed to protect the health and welfare of California residents, including but not limited to Health and Safety Code section 1317 or any other law requiring that health care entities provide emergency abortion services, does not constitute a violation of the conditions of the Weldon Amendment" on the similarly implausible ground that the Act contains no amendment for "emergency" or "medically necessary" abortions.[1] Complaint for Declaratory and Injunctive Relief at 20: 27-28; 22:13-16.

In their Complaint, Plaintiffs argue, without precedent, that the California Constitution and California law require health care facilities to provide abortions in a "medical emergency without exception," Complaint at ¶ 23, and that the State, through its executive agencies, has the discretion to take action against health care entities and health care professionals who refuse to provide abortion related services in emergency situations "where such services are necessary to protect the life or health of a woman." *Id.* at ¶ 26. Plaintiffs' posture in this regard is particularly problematic for Catholic healthcare institutions in California. As a matter of

---

[1] While California's Reproductive Privacy Act provides definitions for "abortion," "pregnancy," "state," and "viability," Cal. Health & Safety Code § 123464, and establishes that the state may not interfere with a woman's right to undergo an abortion when the abortion is "necessary to protect the life or health of the woman," Cal. Health & Safety Code § 123466, no statute expressly defines what constitutes an "emergency" or a "medically necessary" abortion. California law places minimal restrictions on abortion. Prior to viability, abortions must be performed or assisted by an authorized health care provider. Cal. Health & Safety Code § 123468. After the unborn child becomes "viable," abortion is not permitted if "in the good faith medical judgment of the physician, the fetus was viable," or if "in the good faith medical judgment of the physician, continuation of the pregnancy posed *no risk* to life or health of the pregnant woman." *Id.*; *see e.g., People v. Belous*, 71 Cal. 2d 954, 963 (1969) ("The woman's right to life is involved because childbirth involves risks of death"). California courts have adopted similarly expansive interpretations as to when an abortion may be considered "necessary." As explained by the California Supreme Court, "necessary" abortions are not limited to those which address a life-threatening condition, but extend to instances where a "therapeutic abortion" is necessary for "personal health." *Committee to Defend Reproductive Rights v. Myers*, 29 Cal. 3d 252, 274 (1981). The Court has concluded that this interest is related to a woman's ability to "retain personal control over her body," and her right to "decide for herself whether to parent a child." *Id.*

4

religious imperative and conscience, Catholic healthcare institutions may not, under any circumstances, provide abortion services or materially cooperate in any medical procedure whose sole immediate effect is the termination of pregnancy before viability.  *See* Directive No. 45, *Ethical and Religious Directives for Catholic Health Care Services*, p. 9, attached as Exhibit "A" to the Declaration of James F. Sweeney ("Sweeney Decl.").

The *Ethical and Religious Directives for Catholic Health Care Services* promulgated by the Catholic bishops of the United States govern the ethical and religious practices of Catholic healthcare institutions in the United States.  *See* Preamble, *Ethical and Religious Directives for Catholic Health Care Services*, p. 1, Sweeney Decl., Exhibit "A."  Of paramount importance to these *Directives* is the general ethical principle that, because "the Church's commitment to human dignity inspires an abiding concern for the sanctity of human life from its very beginning," Catholic healthcare institutions must, at all times, serve as "witnesses to the sanctity of life 'from the moment of conception until death.'" Introduction, Part Four: Issues in Care for the Beginning of Life, *Ethical and Religious Directives for Catholic Health Care Services*, p. 8, Sweeney Decl., Exhibit "A."  To this end, Directive No. 45 of the *Ethical and Religious Directives* provides:

> Abortion (that is, the directly intended termination of pregnancy before viability or the directly intended destruction of a viable fetus) is never permitted. Every procedure whose sole immediate effect is the termination of pregnancy before viability is an abortion, which, in its moral context, includes the interval between conception and implantation of the embryo. Catholic health care institutions are not to provide abortion services, even based upon the principle of material cooperation. In this context, Catholic health care institutions need to be concerned about the danger of scandal in any association with abortion providers.

Directive No. 45, *Ethical and Religious Directives for Catholic Health Care Services*, p. 9, Sweeney Decl., Exhibit "A."  Hence, Catholic healthcare institutions, as a matter of religiously-based conscience, may not provide abortions, regardless of whether there is a "medical emergency" or any other reason for doing so.

The Weldon Amendment is a matter of great importance to Catholic healthcare institutions in California.  Congress has decisively acted to protect California's Catholic

SWEENEY, DAVIDIAN & GREENE LLP
ATTORNEYS AT LAW
8001 FOLSOM BOULEVARD, SUITE 101
SACRAMENTO, CALIFORNIA  95826

healthcare institutions from discrimination as these important religious ministries provide vital healthcare services to millions of Californians—many of whom reside in rural and underserved urban communities—in a manner consistent with Catholic moral, ethical, and religious principles. Thus, the Alliance seeks to intervene in this action as a defendant to protect its members' rights of conscience safeguarded by the Weldon Amendment.[2] Should the Court declare the Weldon Amendment unconstitutional, enjoin its enforcement, or declare that State-mandated provision of emergency abortion services does not violate the Amendment, the Alliance's members would be subjected to invidious governmental discrimination, based upon the Alliance's members' choice not to participate in the provision of abortions as a matter of religiously-formed conscience.

## SUMMARY OF ARGUMENT

The Alliance's interests stand in contrast to those of the existing defendants, whose interests are based upon the requirement that they defend and implement duly enacted legislation. The existing federal defendants are not interested parties in the same sense as the Alliance, as they do not have an interest in the underlying principles and protections of the Weldon Amendment, but are instead concerned with whether the Weldon Amendment constitutes an appropriate exercise of federal power. As a "health care entity" under the Act, and a beneficiary of the conscience protections afforded by its provisions, the Alliance of Catholic Health Care claims an interest in the outcome in this litigation different from the existing parties and is entitled to intervene as a matter of right under Federal Rule of Civil Procedure, Rule

---

[2] The health care facilities operated by Alliance's members include hospitals, out-patient medical facilities, residential care facilities, and a variety of other facilities providing both emergency and non-emergency care to their respective communities. Dangberg Dec. ¶ 3. Plaintiffs' challenge to the Act seeks the imprimatur of this Court for the State of California to discriminate against the Alliance's members based upon the refusal of Catholic healthcare institutions to participate in providing abortions contrary to their moral, ethical, and religious beliefs. *See Id*. at ¶ 4, 5 (Explaining that Alliance's members do not provide abortion services). Indeed, Plaintiffs seem to go even farther in the Complaint by taking the untenable position that Catholic healthcare institutions that refuse to provide abortions in "emergency" situations may

SWEENEY, DAVIDIAN & GREENE LLP
ATTORNEYS AT LAW
8001 FOLSOM BOULEVARD, SUITE 101
SACRAMENTO, CALIFORNIA 95826

24(a)(2). The Alliance's interests in the substantive protections afforded by the Act will be denied in their entirety if the Court grants relief as requested by the Plaintiffs. As the Alliance's interests include the moral, ethical, and religious freedoms its members possess under the Constitution and state and federal law, and are not limited to whether the Weldon Amendment constitutes an appropriate exercise of Congress' spending authority, they may differ from, and not be adequately represented by, the existing parties to the case. As a consequence, the Alliance is permitted to intervene as a matter of right pursuant to Federal Rule of Civil Procedure, Rule 24(a)(2).

In the alternative, permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2) is appropriate on the ground that the Alliance's defenses and the main action have a question of law or fact in common. As this action is in the earliest of stages, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.

## ARGUMENT

### I.

### THE ALLIANCE IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT UNDER FEDERAL RULE OF CIVIL PROCEDURE, RULE 24(a)

As the Alliance is among the class of "health care entities" whose right of conscience was intended to be protected by the United States Congress' enactment of the Weldon Amendment, the Alliance easily meets the standard for intervention as a defendant to ensure that its rights are vigorously defended. Federal Rule of Civil Procedure 24(a)(2) governs intervention as a matter of right in instances such as this, where no statute confers an unconditional right to intervene, and provides that the court shall permit intervention where "upon timely application"

> the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

---

face regulatory or criminal action for refusing to recommend alternative facilities for the performance of abortions.

7

Fed. R. Civ. P. 24(a)(2). This has been described by the Ninth Circuit Court of Appeals as a four part test under which (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit. *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817-818 (9th Cir., 2001). This Rule is construed broadly in favor of potential intervenors, and is "guided primarily by practical considerations, not technical distinctions." *Id. See also*, *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983) ("Rule 24 traditionally has received a liberal construction in favor of applications for intervention"). As a beneficiary of the protections afforded by the Weldon Amendment, and as a party likely subject to discrimination and compelled by the State to provide abortion services over its objection, the Alliance easily meets the standard for intervention as a matter of right.

**A.   The Alliance's Interest Under the Weldon Amendment in Freedom From Discrimination and State-Compelled Provision of Abortions is Sufficient to Support Intervention as a Matter of Right**

In this instance, the Alliance is entitled to intervene based upon its interest in the protections its members are afforded by the Weldon Amendment. The Alliance's members, physicians, and employees are "health care entities" within the meaning of the Amendment, and are protected by the Amendment from discrimination based upon their refusal to provide, pay for, or refer for abortions. Dangberg Dec. ¶ 2. *See* P.L. 108-477, Section 508(d)(2). As health care entities that may be stripped of the Amendment's protections, discriminated against, or compelled to provide or be complicit in the provision of abortion services in contravention of their moral, ethical, and religious beliefs, the Alliance has a palpable interest in the continued vitality of the Amendment.

Although the Alliance claims a direct interest in the Weldon Amendment, the standard set by Rule 24(a)(2) is far lower, and it is "generally enough that the interest is protectable under

some law, and that there is a relationship between the legally protected interest and the claims at issue." *Sierra Club v. United States EPA*, 995 F.2d 1478, 1484 (9th Cir., 1993). The Ninth Circuit has repeatedly rejected the notion that Rule 24(a)(2) requires the prospective intervenor to demonstrate a specific legal or equitable interest. *See County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). In fact, the test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id*. (citation omitted).

As explained in the advisory committee notes to Rule 24(a)(2), "if an [applicant] would be substantially affected in a practical sense by the determination made in an action, [the applicant] should, as a general rule, be entitled to intervene. . . ." This has entitled entities with less substantial interests than those of the Alliance to intervene as a matter of right. For example, in *Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980), the Ninth Circuit held that the National Organization for Women had the right to intervene in a suit challenging procedures for ratification of the proposed Equal Rights Amendment to the Constitution of the United States, based upon its interest in the "continued vitality of the ERA." *Id*. at 887. Similarly, in *Washington State Building & Construction Trades v. Spellman*, 684 F.2d 627 (9th Cir. 1982), *cert. denied*, 461 U.S. 913 (1983), the Ninth Circuit held that a public interest group was entitled as a matter of right to intervene in an action challenging the legality of a measure which it had supported, notwithstanding that there was no suggestion the group was protected by the statute. *Id.* at 629-30.

Much like the farmers in *County of Fresno* who were entitled to intervene as of right to protect their interest in regulations being promulgated under federal statutes enacted for their protection, 622 F.2d at 438, the Alliance possesses an interest in the Act and numbers prominently among those who will be injured by the removal of the Act's conscience protections.

///

//

9
Applicant The Alliance of Catholic Health Care's MPA in Support of Motion to Intervene.
Civil Action No.: C-05-00328 JSW

### B. The Alliance's Interests May Be Directly Impaired as a Result of this Litigation

The test adopted by the Ninth Circuit under Rule 24 requires the proposed intervenor to show that it is "so situated that without intervention the disposition of the action may, as a practical matter, impair or impede his ability to protect its interest [in the matter litigated]." *Sagebrush*, 713 F.2d at 527. *See also Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (Ninth Circuit follows the Rule 24 advisory committee notes that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene"). In a variety of other cases involving organizations, some involving less direct interests, the Ninth Circuit has found that the impairment of interest element of the test for intervention was easily met. For example, in *Sagebrush* the court found that the proposed intervenor's interest in preserving birds and their respective habitats may be impaired by the disposition of the matter. 712, F.2d at 527. The Ninth Circuit recalled that in its prior cases involving organizations, such as *Washington State Building & Construction Trades* and *Idaho*, there was no question that the court's decision might, as a practical matter, impair the ability of the organizations to protect their interests. *Id*.

The Alliance easily satisfies the impairment of interests test. The Alliance's members' interests under the Weldon Amendment may be eliminated, constitutional and statutory rights impaired, and the ability to pursue their mission consistent with their moral, ethical, and religious beliefs may be denied by the Court's disposition of this matter, and the Alliance may be prevented from taking legal action to protect its interests in the future. Ultimately, if the Court grants Plaintiffs' request for injunctive relief and a declaratory judgment that the Amendment is unconstitutional, the Alliance and its members will be subject to discrimination by state and local government agencies receiving and disbursing federal funds based upon their core religious and ethical beliefs.

If the Alliance is not made a party to this action, it will have no legal means to challenge any injunctive or declaratory relief after the decision is rendered. *See United States v. Oregon*,

Applicant The Alliance of Catholic Health Care's MPA in Support of Motion to Intervene.
Civil Action No.:  C-05-00328 JSW

839 F.2d 635, 639 (9th Cir. 1988) (citing this Ninth Circuit's precedents "recognizing practical limitations on the ability of intervention applicants to protect interests in the subject of the litigation after court-ordered equitable remedies are in place") (citations omitted)).  Moreover, as the State seeks a declaration that requiring the provision of "emergency" or "necessary" abortion services does not contravene the Amendment, Complaint at ¶ 57, the Alliance may be barred by stare decisis from litigating whether the Amendment protects them from being compelled by the State to provide abortion services.  *See Yniguez v. Arizona*, 939 F.2d 727, 737 (9th Cir. 1991) (declaratory relief against governmental defendant may bind government in other legal actions).  There is no reasonable dispute that the Alliance's interests may be impaired, if not denied in their entirety, by these proceedings, and that the impairment of interest element of Rule 24(a)(2) is satisfied.

### C. The Alliance's Interests are not Adequately Represented by Existing Parties

In determining whether the Alliance's interests will be adequately represented by an existing party, the Courts must consider:  (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.  *California v. Tahoe Regional Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986).  The burden of showing inadequacy is "minimal," and the applicant need only show that representation of its interests by existing parties "may be" inadequate.  *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972).  In assessing the adequacy of representation, the focus should be on the "subject of the action," not just the particular issues before the court at the time of the motion.  *Sagebrush*, 713 F.2d at 528.

The Alliance's interests may well be aligned with the existing Defendants to the extent that both it and the existing Defendants seek to defend the Weldon Amendment.  But the nature and origins of their interests differ very substantially.  The Alliance's arguments cannot be

expected to be presented by the United States, as the United States does not stand to suffer an impairment of fundamental constitutional rights as would the Alliance and its member healthcare institutions. The United States is charged with defending and implementing the Amendment, as an Act of Congress, and with preserving Congress' powers under the Spending Clause. In contrast, the Alliance seeks to protect its conscience rights which are expressly protected by the First Amendment and safeguarded against State action by the Weldon Amendment. As the Alliance's interests are grounded in its constitutionally protected freedoms, and its exercise of its moral, ethical, and religious beliefs, its arguments will undoubtedly differ from those of the existing parties, and may present religious freedom arguments existing parties may neglect. Both the United States and the Alliance represent different, but vitally important interests, which are essential to a fair and complete resolution of the issues raised in the State's complaint.

### D.     The Alliance's Motion is Timely

The Ninth Circuit considers three factors to determine whether a motion to intervene is timely: (1) the stage of the proceeding at the time the applicant seeks to intervene; (2) prejudice to the existing parties resulting from the applicant's delay in seeking leave to intervene; and (3) the reason for the length of delay involved. *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986), *cert. denied*, 480 U.S. 946 (1987). The mere lapse of time alone is not determinative. *Id*. The Alliance seeks to intervene in this action while this action is in the earliest of stages of litigation. The Court has not substantially engaged the issues in this case and only recently lifted the stay on discovery. No relief has been granted, or settlement agreements reached, rendering the motion untimely. *See Id*. at 538 (motion untimely when made after five years of litigation and proposed settlement reached by the parties). As the Defendants' motion to dismiss has only recently been denied, the Alliance has now been able to determine that its interests are at stake, and seeks to intervene and preserve its constitutional and statutory rights. The Alliance chose to await the outcome of the Defendants' motion to dismiss as the need for intervention would have been obviated had the motion been granted and the case dismissed. The

Alliance's intervention will create no delay in these proceedings, require the Court or parties to revisit discovery or law and motion matters, and will not be prejudicial to the existing parties.

## II.

## THE ALLIANCE'S INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE, RULE 24(b) IS ALSO APPROPRIATE

In the alternative, the Alliance seeks permissive intervention under Federal Rule of Civil Procedure, Rule 24(b). Rule 24(b)(2) provides for intervention where, upon timely application, "an applicant's claim or defense and the main action have a question of law or fact in common." Just as discussed above, the court must also consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. The most significant difference between permissive intervention and intervention as a matter of right is that permissive intervention does not require that the intervenor demonstrate a significant protectable interest. *See* Fed. Rule Civ. P. 24(b)(2). "[A]ll that is necessary for permissive intervention is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094, 1108 (9th Cir. 2002).

The Alliance also satisfies Rule 24(b)(2)'s requirements for permissive intervention. As discussed above, the Alliance's application is timely. The Alliance's defenses will raise questions of law and fact in common with those of the existing parties. The Alliance will present its arguments that the Weldon Amendment constitutes a valid exercise of Congress' spending power, and does not unconstitutionally restrict any right to abortion recognized by *Roe v. Wade*, 410 U.S. 113 (1973) or *Planned Parenthood v. Casey*, 505 U.S. 833 (1992). The Alliance will also present arguments regarding the effect of Plaintiffs' requested relief on the constitutional and statutory rights of the Alliance and similarly situated parties, including the significant deprivation of their moral, ethical, and religious right to seek to preserve the life of the unborn, rather than be compelled to compromise their principles and participate in the provision of abortion services based upon an undefined assertion of "medical necessity." Applicant believes that it satisfies the standards for intervention as of right, but in the alternative suggests that it also

meets the requirements for permissive intervention, and respectfully requests that it be granted leave to intervene.

## CONCLUSION

The Alliance is squarely within the class of health care entities whose rights of conscience the Weldon Amendment was intended to protect.  As a beneficiary of the conscience protections afforded by the Act, the Alliance, and its members, have substantial and direct interests which will be impaired, impeded, or denied absent intervention, and as the Alliance has filed a timely motion, it respectfully requests that its motion to intervene as a matter of right be granted.  In the alternative, the Alliance should be permitted to intervene on the ground that the Alliance's defenses and the main action have a question of law or fact in common.

DATED:  August 10, 2005            SWEENEY, DAVIDIAN & GREENE LLP


By: _____/S/_____
         James F. Sweeney
Attorneys for Applicant Defendant-Intervenor
THE ALLIANCE OF CATHOLIC HEALTH CARE

SWEENEY, DAVIDIAN & GREENE LLP
ATTORNEYS AT LAW
8001 FOLSOM BOULEVARD, SUITE 101
SACRAMENTO, CALIFORNIA 95826