1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  STATE OF CALIFORNIA, et al.

10             Plaintiffs,                         No. C 05-00328 JSW

11       v.

12  UNITED STATES OF AMERICA, et al.           **ORDER RE CROSS-MOTIONS**
                                                **FOR SUMMARY JUDGMENT**
13             Defendants.

14  _____/

15             Now before the Court is the motion for summary judgment filed by plaintiffs the State

16  of California ("California"), *ex rel* Bill Lockyer, in his official capacity as Attorney General of

17  the State and Jack O'Connell, in his official capacity as the State Superintendent of Public

18  Instruction (collectively, "Plaintiffs"), and the cross-motions for summary judgment filed by

19  defendants United States of America, United States Department of Labor, Elaine Chao, in her

20  official capacity as Secretary of Labor, United States Department of Health and Human

21  Services, Tommy G. Thompson, in his official capacity as Secretary of  Department of Health

22  and Human Services, United States Department of Education, and Margaret Spellings, in her

23  official capacity as Secretary of Education (collectively, "Defendants"), defendant-intervenor

24  Alliance of Catholic Health Care ("Alliance"), and defendant-intervenors Christian Medical

25  Association, American Association of Pro-Life Obstetricians and Gynecologists, and

26  Fellowship of Christian Physician Assistants (collectively, "Medical Groups").  Having

27  carefully reviewed the parties' papers, the brief filed by *amicus curiae* California Medical

28  Association and Planned Parenthood Affiliates of California, the relevant legal authority, and

having had the benefit of oral argument, the Court denies Plaintiffs' motion for summary

**United States District Court**
For the Northern District of California

1    judgment and grants the cross-motions for summary judgment filed by Defendants, the

2    Alliance, and Medical Groups.[1]

3                                  **BACKGROUND**

4          Plaintiffs challenge the constitutionality of section 508(d) of the Departments of Labor,

5    Health and Human Services, and Education, and Related Agencies Appropriations Act, 2005

6    (the "Weldon Amendment").  Consolidated Appropriations Act, 2005, Pub. L. No. 108-447,

7    118 Stat. 2809, 3163.  The Weldon Amendment prohibits any federal funds from being made

8    available to a state or local government "if such ... government subjects any institutional or

9    individual health care entity to discrimination on the basis that the health care entity does not

10   provide, pay for, provide coverage of, or refer for abortions."  *Id*.  The Weldon Amendment was

11   reenacted in subsequent appropriations bills and remains in effect.  Consolidated Appropriations

12   Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844.

13         California has a statutory scheme that requires health care facilities that provide

14   emergency services to provide medically necessary emergency abortions.  Plaintiffs contend

15   that because the Weldon Amendment does not contain an explicit exception for situations in

16   which an emergency abortion is needed to protect the health or life of a woman, there is a

17   conflict between federal and state law, and that this conflict negatively impacts California's

18   sovereign interests.  Plaintiffs move for summary judgment as to whether the Weldon

19   Amendment violates the Spending Clause and a woman's constitutional right of access to

20   abortions.  (Plaintiffs' Mot. at 1-2.)  Defendants cross-move for summary judgment as to the

21   constitutionality of the Weldon Amendment, but also contend this action should be dismissed

22   for lack of standing and ripeness.  (Defendants' Mot. at 1-2.)  The Alliance and Medical Groups

23   similarly move for summary judgment on the issues of standing and ripeness and the

24   constitutionality of the Weldon Amendment, in addition to other issues.  The Court shall

25   address additional facts as necessary to its analysis in the remainder of this Order.

26

27

28         [1] The Court GRANTS the motions filed by the Alliance and Medical Groups for leave
     to file statements of recent decisions.

United States District Court
For the Northern District of California

1    Although the Court recognizes the importance of the issues before it, and the serious

2    potential consequences if a woman were to be denied necessary medical services in an

3    emergency, as currently presented the Court cannot reach the merits of this matter.

4                                         **ANALYSIS**

5        **A.      Legal Standards Applicable to Standing and Ripeness.**

6        Federal courts' jurisdiction "is circumscribed by the 'case or controversy' requirement

7    of Article III standing and by prudential considerations, such as ripeness." *Scott v. Pasadena*

8    *Unified Schl. Dist.*, 306 F.3d 646, 654 (9th Cir. 2002).  "Article III of the Constitution requires

9    that a plaintiff have standing before a case may be adjudicated." *Covington v. Idaho*, 358 F.3d

10   626, 637 (9th Cir. 2004).  To satisfy the Constitution's standing requirements, a plaintiff must

11   show (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent,

12   not conjectural or hypothetical; (2) the injury must be fairly traceable to the challenged action

13   of the defendant; and (3) it must be likely, as opposed to merely speculative, that the injury will

14   be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

15   (1992); *see also Covington v. Jefferson County*, 358 F.3d 626, 637-38 (9th Cir. 2004).  A

16   plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these

17   elements. *Lujan*, 504 U.S. at 561.  Although, "[a]t the pleading stage, general factual

18   allegations of injury resulting from the defendant's conduct may suffice" to demonstrate

19   standing, "[i]n response to a summary judgment motion, ... the plaintiff can no longer rest on

20   such mere allegations, but must set forth by affidavit or other evidence specific facts... ." *Id*.

21   (internal cite and quotations omitted).  While the Supreme Court has "always insisted on strict

22   compliance with this jurisdictional standing requirement," the standing inquiry must be

23   "especially rigorous when reaching the merits of the dispute would force [a court] to decide

24   whether [a statute is] unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-820 (1997).

25       The "ripeness doctrine is drawn both from Article III limitations on judicial power and

26   from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.,*

27   509 U.S. 43, 57 n.18 (1993).  As a prudential matter, a claim is not ripe for judicial resolution

28   "if it rests upon contingent future events that may not occur as anticipated, or indeed may not

United States District Court
For the Northern District of California

3

occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotes and citation omitted). "The basic rationale of the ripeness doctrine is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Scott*, 306 F.3d at 662 (internal quotes and citation omitted). As with standing, "[t]he prudential considerations of ripeness are amplified where constitutional issues are concerned." *Id*. To determine when a claim is ripe, courts consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id*. (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

### B. Plaintiffs Fail to Demonstrate An Injury In Fact.

The parties contest whether Plaintiffs have sufficiently shown an injury in fact to demonstrate standing. Defendants argue that Plaintiffs will not suffer an injury until a woman needs but is refused a medically necessary emergency abortion, California then attempts to enforce its law requiring the provision of such services, *and* the federal government denies California federal funds as a result. Thus, according to Defendants, this action is merely a "pre-enforcement" action and any injury is too remote at this time for standing purposes. Plaintiffs counter that their unique position as a state with sovereign interests distinguishes this case from those relied on by Defendants in which private citizens or entities challenged statutes as unconstitutional.

The Supreme Court has recognized that a state has standing to sue when it alleges an interest in preserving its sovereignty and its sovereign interests have been interfered with or diminished. *See Bowen v. Public Agencies Opposed to Social Sec. Entrapment*, 477 U.S. 41, 51 n.17 (1986) (affirming district court's finding that state had standing based on alleged diminishment of its sovereignty). A state's sovereign interest includes the power to create and enforce a legal code. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 601 (1982). Courts have held that states have standing when they assert an injury to their sovereign interests in the continued enforceability of their own statutes. *Alaska v. U.S. Department of Transportation*, 868 F.2d 441, 443 (D.C. Cir. 1989); s*ee also Oregon v. Ashcroft*, 192 F. Supp. 2d 1077, 1087 (D. Or. 2002), *aff'd on other grounds*, 368 F.3d 1118 (9th

4

Cir. 2004), *aff'd on merits*, *Gonzalez v. Oregon*, 546 U.S. 243 (2006).  However, Plaintiffs have not demonstrated that their ability to enforce their own statutes has been interfered with or diminished.

In *Alaska*, the Department of Transportation ("DOT") issued orders regarding the regulation of unfair and deceptive advertising under the Federal Aviation Act and exempting international and domestically imposed surcharges.  The National Association of Attorneys General adopted guidelines providing that separate advertising of air travel surcharges was deceptive under various states' consumer protection laws, and several states informed airlines that they intended to enforce these laws.  In response, the DOT warned the states that the federal government preempted this aspect of state advertising regulation and that if the states attempted to enforce them, the DOT would consider taking formal legal action.  *Alaska*, 868 F.2d at 442-43.  The state plaintiffs alleged that, based DOT's assertion of preemption, the states suffered an injury to their sovereign power to enforce state law.  *Id*. at 443.  The court concluded that the state's sovereign interest in law enforcement was sufficient to support standing.  *Id*. at 443.

In *Oregon*, there was a conflict between the Oregon Death with Dignity Act and a directive issued by the then Attorney General, John Ashcroft (the "Ashcroft Directive").  The Oregon Death with Dignity Act provided a detailed procedure by which a mentally competent, terminally ill patient could make a written request for medication to end his or her life.  Physicians and pharmacists were immune from civil and criminal liability, or from any adverse disciplinary action for prescribing medication under the Oregon Act.  *Oregon*, 192 F. Supp. 2d at 1081-82.  The Ashcroft Directive declared that controlled substances could not be dispensed to assist suicide, that prescribing or administering federal controlled substances to assist suicide violated the Controlled Substances Act, and that physicians who prescribed or administered federally controlled substances were subject to suspension or revocation of their registration.  *Id*. at 1079.  Moreover, the Attorney General directed the Drug Enforcement Agency to enforce and apply the Ashcroft Directive.  *Id*. at 1083.  Thus, court found that the Ashcroft Directive essentially nullified the Oregon Act.  *Id*. at 1079.  The court concluded that Oregon met the

1    constitutional requirements for standing by alleging a sufficient injury to its sovereignty and

2    legitimate interest in the continued enforceability of its own statutes.  *Id*. at 1087.

3         In both *Alaska* and *Oregon*, there was a clear conflict between state and federal law and

4    an express statement from a federal official or agency affirmatively finding such a conflict.  In

5    contrast here, is it not evident that federal and state law conflicts.  The Weldon Amendment

6    prohibits any federal funds from being made available to a state or local government "if such ...

7    government subjects any institutional or individual health care entity to discrimination on the

8    basis that the health care entity does not provide, pay for, provide coverage of, or refer for

9    abortions."  Title V, § 508(d) of Division G, 121 Stat. 2209.  The Emergency Medical

10   Treatment and Active Labor Act ("EMTALA") requires hospitals that have a medicare provider

11   agreement and an emergency room or department to provide to anyone requesting treatment an

12   appropriate medical screening to determine whether an emergency medical condition exists, and

13   to stabilize the condition or, if medically warranted, to transfer the person to another facility.

14   *See* 42 U.S.C. § 1395dd(a)-(c).  Analogous to the EMTALA, California Health and Safety Code

15   § 1317 ("Section 1317") requires that: "Emergency services and care shall be provided to any

16   person requesting the services or care, or for whom services or care is requested, for any

17   condition in which the person is in danger of loss of life, or serious injury or illness, at any

18   health facility licensed under this chapter that maintains and operates an emergency department

19   to provide emergency services to the public when the health facility has appropriate facilities

20   and qualified personnel to provide the services or care."  Cal. Health & Safety Code § 1317(a);

21   *see Brooker v. Desert Hosp. Corp.*, 947 F.2d 412, 415 (9th Cir. 1991) (describing Section 1317

22   as "California's version of [the EMTALA]").  California Health and Safety Code § 123420

23   exempts medical personnel and facilities from participating in performing abortions if they

24   object to abortions on moral, ethical, or religious grounds, except in medical emergency

25   situations and spontaneous abortions.  Cal. Health & Safety Code § 123420.

26        There is no clear indication, either from the express language of the Weldon

27   Amendment or from a federal official or agency, that enforcing Section 1317 or the EMTALA

28   to require medical treatment for emergency medical conditions would be considered

United States District Court

For the Northern District of California

6

1    "discrimination" under the Weldon Amendment if the required medical treatment was abortion-

2    related services.

3    In fact, the Weldon Amendment is completely silent on this issue.  The Alliance argues that the

4    Weldon Amendment must be read in light of the EMTALA, which requires hospitals to provide

5    medical services to stabilize an emergency medical condition or, if medically warranted, to

6    transfer the patient to another facility.  *See* 42 U.S.C. § 1395dd.  The Ninth Circuit has made

7    clear that "to the extent that statutes can be harmonized, they should be" and that "Congress

8    must be presumed to have known of its former legislation and to have passed new laws in view

9    of the provisions of the legislation already enacted."  *United States v. Trident Seafoods Corp.*,

10   92 F.3d 855, 862 (9th Cir. 1996).  In light of this standard, it is far from clear whether the

11   Weldon Amendment would prohibit California from enforcing its own version of the EMTALA

12   in medical emergencies.

13            Moreover, the facts currently before the Court undermine Plaintiffs' position that the

14   Weldon Amendment infringes upon the State's ability to enforce Section 1317.  In September

15   2005, and then again in February 2006 by the same complainant, the State received complaints

16   that a pregnant woman needing emergency abortion-related services was denied such services at

17   a California hospital emergency room.  (Declaration of James J. Gilligan, ¶¶ 3, 4.)  On May 2,

18   2006, the California Attorney General's Office referred these complaints to the California

19   Department of Health Services to conduct an investigation of the allegations.  (Declaration of

20   Brenda Klutz, ¶¶ 3, 4.)  Based on its findings from the investigation, California determined that

21   the incident did not constitute a "denial of emergency services" within the meaning of Section

22   1317.  (Declaration of Stephen R. McCutcheon, Ex. 1.)  The evidence before the Court indicates

23   that California fully investigated these complaints, but determined that no violation had

24   occurred.  Thus, it does not appear that California refrained from taking action out of concern

25   that it risked losing billions of dollars in federal funding.  It is not clear what the State would

26   have done, or how the federal government would have reacted, if the State had determined

27   Section 1317 was violated and sought to enforce this statute.

28

**United States District Court**
For the Northern District of California

7

United States District Court

For the Northern District of California

1    In the absence of express statutory language or an express statement from a federal

2    official or agency indicating a present conflict between state and federal law, the Court finds

3    that Plaintiffs have not met their burden to demonstrate an injury in fact to their sovereign

4    interest.

5    **C.    Plaintiffs' Claims Are Not Ripe.**

6    Even if the Court could find that Plaintiffs had sufficiently demonstrated standing, the

7    Court finds that their claims should be dismissed based on the prudential considerations of the

8    ripeness doctrine.  To determine when a claim is ripe, courts consider "both the fitness of the

9    issues for judicial decision and the hardship to the parties of withholding court consideration."

10   *Scott*, 306 F.3d at 662 (internal quotes and citation omitted).  The Court finds that Plaintiffs'

11   claims are not fit for judicial review because whether California will risk losing federal funds

12   pursuant to the Weldon Amendment if it seeks to enforce Section 1317 is contingent upon a

13   series of future events that may not ever occur.  *See Texas*, 523 U.S. at 300 ("A claim is not ripe

14   for judicial resolution if it rests upon contingent future events that may not occur as anticipated,

15   or indeed may not occur at all.") (internal quotes and citation omitted).  Here, Plaintiffs' claims

16   will not be ripe until a woman needs but is refused emergency abortion-related services,

17   California then attempts to enforce its law requiring the provision of such services, and the

18   federal government denies or threatens to deny California federal funds as a result.  Notably,

19   Plaintiffs could not identify any violations of Section 1317 in the twenty years since the statute

20   was enacted.  (Declaration of Elbert Lin, ¶ 2, Ex. A.)

21   Moreover, the Court finds that Plaintiffs will not be harmed by the Court refraining

22   from adjudicating this matter at this time.  To the extent a violation of Section 1317 does occur

23   in the future, as the evidence before the Court demonstrates, Plaintiffs are not powerless to take

24   action.  As California has already done after the Weldon Amendment was enacted, California

25   could investigate any complaints that Section 1317 was violated.  If California determines that a

26   violation did occur, it could then seek a determination from the federal government as to

27   whether taking enforcement action pursuant to Section 1317 would be considered

28   "discrimination" under the Weldon Amendment.  If the federal government answers in the

1    affirmative, or refuses to provide an answer, thus leaving California in a difficult position of

2    putting at risk billions of dollars in federal funds if it enforces its own statute, the case then

3    would be ripe for a court to determine this matter.  At that point, the record would be fully

4    developed.  However, until then, and because it is not clear that such an unfortunate situation

5    would ever occur, this matter is not yet ripe.

6                                    **CONCLUSION**

7           For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED and the

8    cross-motions for summary judgment filed by Defendants, the Alliance and Medical Groups are

9    GRANTED.

10          **IT IS SO ORDERED.**

11

12   Dated: March 18, 2008                    _____
                                               JEFFREY S. WHITE
13                                             UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

9